IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,   )  | |
|                             )  | |
|            Plaintiff,       )  | |
|                             )  | |
| vs.                         )  | Case No. 15-cr-30116-MJR |
|                             )  | |
| JEREMY A. CONKLIN,          )  | |
|                             )  | |
|            Defendant.       )  | |

**MEMORANDUM AND ORDER**

**REAGAN, Chief District Judge:**

A July 22, 2015 indictment charges Jeremy Conklin with unlawful possession of a firearm by a felon—the indictment says that Conklin possessed a 12-gauge shotgun on or about January 23, 2015, and that he had previously been convicted of unlawful use of a weapon on August 13, 2011.  The shotgun was retrieved from Conklin's mobile home on January 23, 2015, by officers with the St. Clair County Drug Tactical Unit; the officers were acting pursuant to a warrant issued by an Illinois state judge to search for evidence of drug use and distribution.  Conklin pled not guilty to the federal charge on August 20, 2015, and is currently scheduled for trial on January 25, 2016.

On October 8, 2015, Conklin filed a motion to suppress the fruits of the search of his home, arguing that the search warrant was not supported by probable cause; that the warrant was overbroad; that the warrant amounted to a general warrant; and that the good faith exception to the exclusionary rule is inapplicable.  A hearing was held on

1

December 18, 2015, and the Court took Conklin's motion under advisement. For the reasons stated herein, the Court grants Conklin's motion to suppress.

**Background**

Conklin's motion to suppress focuses on the events surrounding the search of his home on January 23, 2015, so the United States presented testimony at the suppression hearing from St. Clair County Drug Tactical Unit Investigator Jarrett Neff, the officer who visited Conklin's home and obtained the lion's share of probable cause for the warrant prior to its issuance, and Investigator Shane Brown, the officer who obtained the search warrant from the Illinois state court judge. Investigator Neff testified first, stating that another officer in his unit received a tip from a citizen informant on January 23, 2015, concerning the use and sale of illegal drugs at Conklin's home. The informant said that marijuana, heroin, and methamphetamine were being sold by Conklin at the home and that the informant had seen these sales occur.

About two hours after receiving the tip, Neff and three other officers went to Conklin's home to investigate what the informant said. When they arrived, Neff went to the front door of the home and was greeted first by Conklin and then by the smell of raw cannabis coming from the inside of Conklin's home. Neff told Conklin that police were there concerning illegal drug use at the home and asked for consent to search, which Conklin refused. Neff then conducted an occupancy check of the home and found that Conklin was not listed on the permit, so he arrested Conklin for occupancy violations. At the same time, one of the other officers looked through the window of Conklin's home and saw a bong sitting on top of a dresser. After Conklin was

transported to the Cahokia Police Department, Neff looked through the front window of the home and confirmed that there was a bong inside.  Neff also had a police canine named Pako conduct a sniff of the outside of the home, and Pako alerted to the presence of drugs.  Based on the informant tip, the bong sighting, Neff's sniff, and Pako's sniff, Neff called Investigator Shane Brown, another investigator with St. Clair's Drug Tactical Unit, and dictated probable cause for a search warrant.  Brown then typed up the probable cause section of the warrant application and emailed it to Neff, who confirmed the write-up's accuracy.  Neff left it to Brown to obtain the warrant; his involvement, at least with the warrant application, seemingly ended there.

Investigator Brown testified next—he confirmed Neff's account concerning the probable cause write-up, but highlighted one problem with the write-up that no one noticed at the time:  the write-up said that the citizen informant's tip came on January 23, 2014, but Neff and Brown confirmed that the 2014 date was a scrivener's error—the tip actually came on January 23, 2015, two hours before the search.  After Neff approved the probable cause write-up's accuracy, Brown used a template warrant application for drug cases to put the complete warrant affidavit together.  Brown then sent the draft warrant application to a St. Clair County Assistant State's Attorney, who reviewed and approved the application, and later presented it St. Clair County Judge Kolker, who approved the warrant.  The warrant authorized police to search Conklin's home for:

- Controlled substances of any form;
- Cannabis in any form;
- Weapons of any form;

3

- Catalogues, magazines, brochures, books, manuals, and evidence of ordering the same, relating to equipment or materials used in the preparation to traffic cannabis and controlled substances;
- Paraphernalia, equipment, and tools for packaging, cutting, weighing, distributing, storing, processing, and using cannabis and controlled substances, including, but not limited to, scales, baggies, timers, pipes, cooking utensils;
- Books, records, receipts, checks, check receipts, passbooks, bank statements and records, documentation reflecting an account at a financial institution, money drafts, letters of credit, money orders, cashier's and bank checks, loan records, documents and/or keys relating to safety deposit boxes, credit card receipts, and other items of evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money and other real or personal property;
- Digital paging devices, cellular and digital phones, and the electronic messages contained therein;
- Maps, itineraries, papers, tickets, schedules, calendars, statements, lodging receipts, passports, visas and other items relating to foreign travel plans;
- Addresses and/or telephone books and papers reflecting names, addresses, and/or telephone numbers;
- Records, ledgers, receipts and papers relating to transporting, purchasing, distributing or possessing cannabis and controlled substances;
- United States currency, precious metals, jewelry and financial instruments, including, but not limited to, stocks and bonds;
- Indicia of occupancy, residency, use and/or ownership of the premises to be searched including, but not limited to, utility bills, telephone bills, canceled envelopes, keys, lease agreements, deeds; and
- Photographs and/or video recordings of suppliers, transporters, customers, co-conspirators or others involved in the distribution of cannabis and controlled substances; all of which are either contraband, or which constitute evidence of the commission of or constitute fruits of or which property has been used as the means of committing violations of Illinois Compiled Statutes, Cannabis and Controlled Substances Acts, any and all other documents, instrumentalists, video recordings, audio recordings, or substances which constitute evidence of the commission of or constitute fruits of or which property has been used as the mean [*sic*] of committing violations of the Illinois Compiled Statutes.

Conklin's home was then searched, yielding $451 in United States currency; a cell phone linked to Joseph Allen; a glass smoking bong; $580 in United States currency; a digital scale; a plastic jar; about 65.5 grams of purported cannabis; three plastic jars containing purported tetrahydrocannabinol (the principal psychoactive constituent of

cannabis); drug paraphernalia; a box of Remington 12-gauge shotgun shells; more purported cannabis; another digital scale; five 12-gauge shotgun shells; two cannabis sativa plants; an exhaust fan and grow light from a cannabis grow box; a tetrahydrocannabinol wax maker; a methamphetamine smoking pipe, a cell phone linked to Jennifer McManus; an Ameren bill addressed to Conklin; and—as particularly relevant to his federal charge—a 12-gauge Weatherby shotgun.

Following the search, Conklin was indicted in federal court on one charge of being a felon in possession of a firearm. Conklin now seeks to suppress all of the evidence seized by St. Clair County investigators at his home on January 23, 2015.

## Discussion

The Court will start with Conklin's argument that the search warrant lacked probable cause for evidence of any offense, especially drug distribution. All concede that the dog sniff and the bong sighting violate *Florida v. Jardines*, **133 S. Ct. 1409 (2013)**, and cannot be used to support cause, so that leaves the informant's tip and Neff's sniff of marijuana at the door to back up probable cause for the search warrant.

A reviewing court owes "great deference" to the probable cause conclusion of the judge who issued the search warrant, here Judge Kolker of the St. Clair County Circuit Court. *United States v. Garcia*, **528 F.3d 481, 485 (7th Cir. 2008)**. The Seventh Circuit employs a totality-of-the-circumstances analysis in determining whether an informant's tip establishes cause, looking at the "degree to which the informant acquired knowledge of the events through firsthand observation," the "detail and specificity of the information provided," the "interval between the date of the events

5

and a police officer's application for the search warrant," and "the extent to which law enforcement corroborated the informant's statements."  *United States v. Searcy*, **664 F.3d 1119, 1122 (7th Cir. 2011)**.  These factors are designed to evaluate the informant's reliability and ascertain whether—based upon the facts provided—a substantial basis existed for the issuing judge to conclude that evidence of a particular crime would be found in a particular place.  *Illinois v. Gates*, **462 U.S. 213, 238-39 (1983)**.

This is a close case for informant reliability.  The informant did not appear before the state judge and there was no detail offered to back up the informant's basis for knowledge, a problem that the Seventh Circuit has been critical of in the past.  *See United States v. Thompson*, **801 F.3d 845, 848-49 (7th Cir. 2015) ("We are growing weary of thin affidavits that suffer from the same omissions which provoked our criticism in the past.")**.  That said, the informant saw Conklin selling drugs from inside the home, indicating that his or her information was based on personal knowledge, and the information was received on the same day that the warrant was obtained.  *See United States v. Johnson*, **289 F.3d 1034, 1038-40 (7th Cir. 2002) (noting as "foremost" in the court's analysis "the fact that the [informant] observed first-hand the defendant's illegal conduct"),** *abrogated on other grounds as recognized by United States v. Vaughn*, **433 F.3d 917 (7th Cir. 2006)**.  Tipping the scales towards reliability, the informant's tip regarding marijuana use and distribution was partly corroborated by Neff's sniff of cannabis at Conklin's door.  *See, e.g., Searcy*, **664 F.3d at 1123 ("adequate corroborat[ion]" could cure an affidavit that was "lacking in specificity");** *Johnson*, **289 F.3d at 1038-40 (corroboration by police of "at least one detail" contained within**

**the informant's affidavit was enough to support cause);** *United States v. Gladney*, **48 F.3d 309, 313 (8th Cir. 1995) (when informant's information is "at least partly corroborated," informant's detail, reliability, and credibility are no longer critical)**. Given that the informant personally saw the drug sales and his information was partly corroborated, the Court is of the view that the informant's tip was reliable and adequately supported a search warrant for evidence of use and distribution.

Conklin insists that the date and police corroboration points can't save this warrant—the warrant affidavit stated that the tip came in January 2014 and said nothing of Neff's bona fides for ferreting out marijuana odor, and what's in the affidavit must control. That's too draconian a take on the maxim that the validity of a search warrant turns only on what's in the affidavit. Scrivener's errors in dates and locations can be addressed at a probable cause hearing, no matter what was in the warrant documents. *E.g., United States v. Snyder*, **471 F. App'x 884, 886 (11th Cir. 2012);** *United States v. Walker*, **534 F.3d 168, 171 (2d Cir. 2008);** *United States v. McClellan*, **165 F.3d 535, 545 (7th Cir. 1999)**. So too can omissions concerning an officer's qualifications for something as ubiquitous as recognizing the smell of marijuana: implicit in an officer's statement that he smelled marijuana is that he knows what marijuana smells like by virtue of his law enforcement experience, so there's no qualification problem when that implication is later confirmed at a hearing, as it was here. *E.g., United States v. Ludwig*, **508 F.2d 140, 142 (10th Cir. 1974);** *Miller v. Sigler*, **353 F.2d 424, 427 (8th Cir. 1965)**.

Conklin maintains that, even if the Court credits Neff's sniff, the evidence in the warrant application only establishes cause to believe that evidence of potentially lawful

use of marijuana was occurring at Conklin's home; there's no evidence, according to Conklin, suggesting drug sales, and the evidence of use could be lawful given Illinois' medical marijuana statute. These arguments fail for two reasons. First, the informant's tip indicated that Conklin was selling marijuana and other drugs at the home, and while details about the informant's knowledge were left out of the warrant, the tip was partly corroborated by Neff's sniff at the door. The tip thus gave the state judge cause to issue a warrant for seizure of items linked to use and distribution of illegal drugs. Second, the fact that Illinois legalized medical marijuana does not mean that police need to ascertain whether a suspect can legally possess marijuana before obtaining a search warrant—while Illinois has yet to address the question, other courts in states with similar medical statutes have found that police need not determine in advance whether a person has a registration card before trying for a warrant, as registration is better thought of as an affirmative defense. *E.g.*, ***United States v. Fieck***, **54 F. Supp. 3d 841, 844 (W.D. Mich. 2014) (Michigan Act does not alter "the nature of the evidence required to support issuance of a search warrant");** *Stewart v. Morris*, **No. 10-cv-04106, 2013 WL 5268977, at \*8 (N.D. Cal. Sept. 17, 2013) (California act "does not create a new standard for probable cause, search or arrest," but is only an "affirmative defense")**.

Conklin next argues that the warrant was illegally overbroad, as the affidavit did not provide cause to seize weapons and distribution material, but only cause to seize marijuana. This argument depends on the informant tip being struck, but as the Court said above, the informant's tip was corroborated in part by Neff's sniff, and that plus the other indicators of informant reliability were enough to establish probable cause

that evidence of drug use and dealing would be found at Conklin's home. The provisions of the warrant dealing with controlled substances, catalogues, paraphernalia, guns, books, pagers, maps, addresses, records, and currency all have a common sense relation to drug use and distribution, and were thus supported by probable cause and not invalid. *See United States v. Reichling*, **781 F.3d 883, 887 (7th Cir. 2015) (holding that judges may consider, in evaluating warrant applications, what "is or should be common knowledge," and that judges need not "pretend they are babes in the woods" when vetting probable cause)**. The gun provision is particularly valid under the common-sense approach to probable cause—guns are often linked to drug dealing, and are proper grist for a search warrant when the affidavit lays out probable cause for drug distribution. *United States v. Langford*, **314 F.3d 892, 894 (7th Cir. 2002)**.

That leaves only Conklin's argument about the "all evidence of crime" clause of the warrant, which he claims was so broad as to convert the warrant into an illegal general warrant. The clause in question authorizes police to search Conklin's home for "any and all other documents, instrumentalists [*sic*], video recordings, audio recordings, or substances which constitute evidence of the commission of or constitute fruits of or which property has been used as the mean [*sic*] of committing violations of the Illinois Compiled Statutes." The United States conceded at the suppression hearing that the clause in question allows for the search and seizure of all evidence that violated Illinois statutes, so the Court will treat the clause as authorizing an exploratory search.

A warrant containing only a provision authorizing a search for all evidence of crime is a general warrant, and is invalid. *United States v. Sims*, **553 F.3d 580, 583 (7th**

9

**Cir. 2009)**. The question remains whether a warrant with an "all evidence" provision alongside more specific sections is invalid as a whole—put differently, whether the general clause can be severed away from the particularized sections or if the general clause dooms the entire warrant. One court says the general clause invalidates the whole warrant, *Cassady v. Goering*, **567 F.3d 628, 1159-60 (10th Cir. 2006)**; one court hints that the general clause can be severed, *United States v. George*, **975 F.2d 72, 79 (2d Cir. 1992)**; and the Seventh Circuit—while agreeing that severance is an option when faced with a partially overbroad warrant—hasn't taken up the question as to whether the good parts of a warrant can be severed away from a warrant with a general clause.

It's important to remember that the severance doctrine is itself an exception to the default suppression rule for invalid warrants—when the severance doctrine was adopted by all of the circuits, the courts recognized that the underlying warrant was invalid by virtue of the overbroad clause, but fashioned severance as a way to save valid clauses (and evidence seized pursuant to them) from invalid ones due to the costs inherent in complete suppression. *United States v. Sells*, **463 F.3d 1148, 1155 (10th Cir. 2006)**; *United States v. Cook*, **657 F.2d 730, 735-36 (5th Cir. 1981)**. In fashioning partial severance, the courts recognized that severance would not always apply—it has a place only where the circumstances "reveal that legitimate Fourth Amendment interests will not be jeopardized." *United States v. Freeman*, **685 F.2d 942, 952 (5th Cir. 1982)**.

One of the fundamental interests of the Fourth Amendment was to block a general rummaging, without limit, of a person's home and property. *Coolidge v. New Hampshire*, **403 U.S. 443, 467 (1971)**. These searches were legion in the American

10

colonies and in England prior to the enactment of the Constitution—the general warrant was used to conduct unrestricted searches pursuant to the Crown's libel laws in England, and to conduct general searches for smuggled goods in the American colonies. *Cassady v. Tackett*, 938 F.2d 693, 699 (6th Cir. 1991) (Engel, J., concurring in part). The Founders abhorred those all-encompassing, probing searches of their homes and property, and required a "'particular description' of the things to be seized" to stop them. *Coolidge*, 403 U.S. at 467; *see also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the [particularity] requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.").

In the mine run of severance cases, an overbroad clause is severed away from valid provisions, and evidence seized pursuant to the latter is admissible while evidence seized pursuant to the former is not. *United States v. Reed*, 726 F.2d 339, 342-43 (7th Cir. 1984). Severance of overbroad clauses does some harm to the particularity requirements of the Fourth Amendment, but the harm is minimal—the evidence seized pursuant to the invalid provision is typically set aside, and any search done pursuant to the invalid clause is partly ameliorated by the clause's limited terms. Truly general clauses—clauses that allow for searches for all evidence—go much farther than run of the mill overbroad clauses: they do the same harm to the particularity requirements that overbroad clauses do, but they also allow for a sweeping search through every part of a person's property and seizure of anything the police might like. That kind of

11

rummaging is an affront to one of the main motivators of the Fourth Amendment—it allows police to behave in a way that the Founders loathed—which is why the Tenth Circuit found that severance isn't an option. *See, e.g., Cassady*, **567 F.3d at 634-43 (no severance where any "limiting language" was still 'entirely subsumed by a catchall sentence," which "provid[ed] unlimited authorization for search and seizure of all evidence");** *United States v. Sells*, **463 F.3d 1148, 1158 (10th Cir. 2006) ("[E]very court to adopt the severance doctrine has further limited its application to prohibit severance from saving a warrant that has been rendered a general warrant by nature of its invalid portions despite containing some valid portion.")**. The Court believes that the Tenth Circuit got it right in *Cassady*, and that severance isn't usually available where a warrant contains a general, "all evidence of crime" search clause.

The Court says "usually" because severance might still be an option for a warrant with a general clause if an exploratory search was legally permissible, as it would be if the warrant's more particularized sections authorized a search just as broad as the general section. In that instance, any rummaging wouldn't be improper—the rest of the warrant would have allowed it, and the general section could be treated as mere surplusage. *See United States v. Klebig*, **228 F. App'x 613, 618 (7th Cir. 2007) (severance proper where generalized part of warrant "did not allow for a broader or more invasive search than the valid portion")**. That's not the case here, though; the United States has conceded that the clause in question allowed police to search for all evidence of Illinois crime, and the remainder of the warrant did not allow for that kind of search.

In other words, this warrant allowed for the kind of illegal rummaging detested by the Founders, so severance is unavailable. The warrant is invalid in total.[1]

Merely because severance is unavailable does not mean that suppression must occur—suppression is the default remedy for invalid warrants, but there are exceptions to the rule. One exception is good-faith reliance by police on a warrant issued by a judge, even if the warrant is later found invalid. *United States v. Leon*, **468 U.S. 897, 923 (1984)**. Good faith is broad, but it has its limits—among other circumstances, it does not exist when the warrant had so patent a defect that the police should have known that the warrant was invalid, even if the judge missed the error. *Id.* The warrant here had just that kind of patent defect—the general "all evidence" clause, which the United States agrees provided officers with the authority to search for all evidence of crime, was defective on its face, so police should have known that the warrant was bunk. *E.g.*, *United States v. Stefonek*, **179 F.3d 1030, 1034 (7th Cir. 1999);** *George*, **975 F.2d at 77-78;** *United States v. Dozier*, **844 F.2d 701, 707-08 (9th Cir. 1988)**. It is curious that the warrant passed the muster of the state attorney and state court judge.

One other exception to the exclusionary rule, identified by the Seventh Circuit in *United States v. Stefonek*, **179 F.3d at 1034**, allows evidence to be admitted even when the warrant allowed for a general search, so long as the police did not engage in a roving search but instead seized evidence pursuant to the valid aspects of the warrant

---

[1] There's another, albeit related, basis for invalidity—many circuits recognize that severance is unavailable when the particularized clauses are outgunned by the non-particularized ones. *See Sells*, **463 F.3d at 1158-59 (collecting cases)**. Here, while the vast majority of the warrant's clauses were valid, the general clause is of such breadth that it contaminates the entire warrant, making partial severance inappropriate.

13

or the affidavit. A look at the evidence seized from Conklin's home suggests that this exception has legs here, but the United States has the burden to establish that the exclusionary rule should not apply when a warrant is invalid, ***United States v. Koerth*, 312 F.3d 862, 868 (7th Cir. 2002)**, and the United States made no effort to prove that police did not engage in a rummaging of Conklin's home pursuant to the warrant's general clause. Indeed, the United States never took the Court inside the mobile home at the suppression hearing, so the Court has no idea about the details of the interior search. If the United States had offered any evidence about the way the search was conducted, suppression might not be in order. But the United States failed to raise the point, so it is waived. ***United States v. Collins*, 796 F.3d 829, 836 (7th Cir. 2015)**.

## Disposition

For the reasons stated above, Conklin's motion to suppress (Doc. 23) is **GRANTED**. All evidence seized pursuant to the warrant is suppressed.

**IT IS SO ORDERED.**

**DATED: January 4, 2016**

/s/ **Michael J. Reagan**
**Chief Judge Michael J. Reagan**
**United States District Court**